**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL R. SCHELLBERG,** | : |
| Petitioner, | : CIVIL NO. 3:CV-05-2091 |
| vs. | : (CHIEF JUDGE VANASKIE) |
| **CAMERON LINDSAY,** | : |
| Respondent. | : |

**M E M O R A N D U M**

Michael R. Schellberg commenced this habeas corpus proceeding pursuant to 28 U.S.C. § 2241 on October 13, 2005. At the time he filed the petition he was incarcerated at the Federal Prison Camp at Canaan, Waymart, Pennsylvania. Named as Respondent is Cameron Lindsay, Warden at FPC-Canaan.[1] In the petition, Schellberg challenges the Bureau of Prisons (BOP) policy regarding the release of inmates to a halfway house, or Community Corrections Center (CCC). He requests the Court to order the BOP to approve him for a six month CCC placement as opposed to the forty-five (45) day CCC placement decision initially made by the BOP, but which was later reduced to thirty (30) days based upon Schellberg's violation of institution rules. For the reasons that follow, the petition will be

---

[1] Petitioner has recently been transferred to the Federal Correctional Institution at Fort Dix, New Jersey.

denied.

I.     **Background**

Schellberg was sentenced to an eighteen (18) month term of imprisonment on April 20, 2005 in this Court for "Interstate Transportation of Stolen Good" and "Aiding and Abetting" in violation of 18 U.S.C. §§ 2314 and 2.  He received a three (3) year term of supervised release, and was also ordered to pay restitution and a felony assessment.  His projected discharge date with Good Conduct Time is August 16, 2006.  Pursuant to 28 C.F.R. §§ 570.20 and 570.21, the BOP determined that Schellberg should be placed in a halfway house for approximately forty-five (45) days before his release date, or on or about July 3, 2006.   Schellberg challenges the regulations, and argues that he is entitled to a six (6) month CCC placement pursuant to 18 U.S.C. § 3624(c).

Service of the petition and a supplement thereto was directed on January 24, 2006.  A response was submitted on February 8, 2006.  (Dkt. Entry 5.)  Following an enlargement of time, Schellberg filed a traverse on February 23, 2006.  The matter is now ripe for consideration.

II.    **Discussion**

Pursuant to 18 U.S.C. § 3621(b), the BOP is vested with authority to determine the location of an inmate's imprisonment.  The statute grants the BOP authority not only to

2

designate the place of imprisonment, but also lists five (5) factors for consideration in making placement and transfer decisions.  Section 3621(b) provides as follows:

> (B) Place of imprisonment.  The Bureau of Prisons shall designate the place of prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> > (1)  the resources of the facility contemplated;
> >
> > (2)  the nature and circumstances of the offense;
> >
> > (3) the history and characteristics of the prisoner;
> >
> > (4) any statement by the court that imposed the sentence –
> >
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > >
> > > (B) recommending a type of penal or correctional facility as appropriate; and
> >
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under the subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at

3

> any time, having regard for the same matters, direct the transfer
> of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621.

The specific statutory authority for placement of an inmate in pre-release custody near the end of his sentence is set forth in 18 U.S.C. § 3624(c), which in pertinent part provides:

> The Bureau of Prison shall, to the extent practicable, assure that
> a prisoner serving a term of imprisonment spends a reasonable
> part, not to exceed six months, of the last 10 per centum of the
> term to be served under conditions that will afford the prisoner a
> reasonable opportunity to adjust to and prepare for the prisoner's
> re-entry into the community. The authority provided by this
> subsection may be used to place a prisoner in home
> confinement.

The customary practice of the BOP was to consider prisoners for CCC placement for up to six months at the end of a sentence, regardless of total sentence length (thus, even if this occurred before the prisoner had served 10% of his sentence). However, in December of 2002, the BOP replaced this procedure with a rule which provided that, under § 3624(c), CCC residence must be limited to the lesser of ten percent of a prisoner's sentence or six months.

Several circuit courts declined to adhere to the 2002 policy, finding it to be unlawful because it failed to recognize the BOP's discretion to transfer an inmate to a CCC at any time, and thus was contrary to the plain meaning of § 3621. See Elwood v. Jeter, 386 F.3d 842

(8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).  In response to these decisions, the BOP proposed new regulations in August 2004, which became effective on February 14, 2005.  See 28 C.F.R. §§ 570.20 and 570.21.  According to the regulations,

> [t]he Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

28 C.F.R. § 570.21(a).  In compliance with these regulations, FPC-Canaan Camp Administrator Julie Nicklin and Schellberg's Case Manager determined that Schellberg should be placed in a CCC for approximately forty five (45) days before his release date, or on or about July 3, 2006.

In the instant petition, Schellberg challenges the legality of the BOP's 2005 regulations and submits a supplement to his petition, citing the recent Third Circuit Court of Appeals case of Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), in support of his position.  In Woodall, the Third Circuit found the 2005 regulations to be unlawful in that they do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for sentence. See Woodall, 432 F.3d at 244.  Under the 2005 regulations, the BOP categorically removed its ability to consider the explicit factors set forth by Congress in § 3621(b) for making

placement and transfer determinations. Our Court of Appeals held that at the very least the BOP <u>must</u> consider the five factors set forth in § 3621(b). The 2005 regulations did not permit full consideration of these factors because the amount of time an inmate may spend in a CCC is categorically limited to the lesser of six months or ten percent of a sentence without regard to individualized circumstances. While acknowledging that the BOP may exercise considerable discretion and is not required to transfer a prisoner at any specific time, the BOP must make any decision regarding transfer using the factors that Congress has enumerated. 432 F.3d at 245-47.

Respondents argue that the petition should be denied in that Schellberg has received all relief to which he is entitled. They acknowledge that the <u>Woodall</u> case controls the disposition of the instant petition, but contend that since the <u>Woodall</u> decision, Schellberg has been provided with a good faith reconsideration by the BOP pursuant to the principles announced in <u>Woodall.</u> This reconsideration of Schellberg's placement in a CCC occurred on January 26, 2006, by Camp Administrator Nicklin and Schellberg's Case Manager. (Dkt. Entry 5, Ex. 1, Nicklin Decl. at ¶ 25.) It was again concluded that a 45 day CCC placement was appropriate and would allow Schellberg to reintegrate into the community. He was

therefore approved for placement on or about July 1, 2006.[2]  Based on the foregoing, Respondents contend that Schellberg has received the only relief to which he is entitled under Woodall, a review of his CCC placement in accordance with the factors set forth in 18 U.S.C. § 3621, and his petition should be denied.

In his traverse Schellberg attacks the merits of the "reconsideration" decision made by the BOP.  He questions whether the BOP actually did use "good faith" in reaching its decision, and claims that if he had the opportunity to take part in the reconsideration meeting, he could have provided information that would have changed the BOP determination.  For example, he claims that he has secured employment following his release, he has significant financial obligations, including $201,000.00 in restitution and $1100 a month child support payments, and his help is required to deal with his young son who is a "disciplinary challenge." (Dkt. Entry 8, Traverse at 3.)  He further argues that the BOP provided no explanation as to why he should not be considered for additional time in a CCC.

Respondents submit the declaration made under penalty of perjury of Julie A. Nicklin, Camp Administrator/Executive Assistant at FPC-Canaan.  (Dkt. Entry 5, Ex. 1, Nicklin Decl.)  Nicklin states that as part of her duties, she is involved in transfer decisions and

---

[2] It was noted by Respondents that any change in Schellberg's projected release date (via Good Conduct Time release) may affect his CCC placement date. (Dkt. Entry 5, Resp. at 7.)

recommendations for CCC placements. Following the Woodall decision, Schellberg's CCC placement was reviewed, in good faith, by herself and Schellberg's case manager. The following factors set forth in 18 U.S.C. §3621 were fully considered: (1) resources of facility contemplated; (2) nature and circumstances of the offense; (3) history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to § 994(a)(2) of Title 28. (Id., ¶¶ 11-13.) In addition, other appropriate factors routinely used in making these decisions were used, including correctional and population management interests i.e., length of sentence, seriousness of offense, criminal history, institution conduct, programming needs, availability of facilities, public safety, threat to community, community ties, release residence, employment and education history and economic resources.

The following factors were specifically addressed by Nicklin and Schellberg's Unit Manager in reconsidering his CCC placement:

> (1) his acceptance for placement at Catholic Social Services in Scranton, Pennsylvania, a facility with 20 beds and a current quota of 20 inmates, which is located one hour from his residence;
>
> (2) the fact that Schellberg's instant offense involved Interstate

> Transportation of Stolen Goods and Aiding and Abetting, whereby he shipped $398,928.54 of stolen digital equipment from Sears Logistics Services in Hanover, Pennsylvania. With the exception of the current offense and traffic violations, he has no other criminal history.
>
> (3) Schellberg has a secure residence to return to upon release in that he intends to reside with his girlfriend and father.
>
> (4) Schellberg has strong family ties in the area as evidenced by a review of his pre-sentence report and current visiting list which includes nineteen (19) visitors.
>
> (5) Schellberg holds a high school diploma.
>
> (6) While Schellberg indicates that he does not have any employment prospects at this time, he has a stable history of employment prior to incarceration, earning salaries around $55,000.
>
> (7) No judicial recommendation for CCC placement and no pertinent policy statements were issued by the Sentencing Commission.

(Id., ¶¶ 18-24.)  Based on the foregoing considerations, Schellberg was again approved for a 45 day CCC placement in that it was concluded that this period of time would be appropriate to allow Schellberg to reintegrate into the community.  CCC placement was approved for on or about July 1, 2006 based on his projected release date at that time of August 16, 2006. Because July 1, 2006 falls on a Saturday, Respondents state that Schellberg would most likely be released to a CCC on June 30, 2006.  It was further noted that any change in

Schellberg's projected release date (via Good Conduct Time release) could affect his CCC placement date. (Id., ¶ 27.)

Based on the foregoing, it is clear that the mandatory factors set forth in § 3621(b) were considered by the BOP in concluding that a 45 day CCC placement was appropriate for Schellberg.  The BOP may exercise considerable discretion, but must do so using the factors that Congress has specifically enumerated.  In light of the BOP's consideration of the required factors, and the individualized determination given in this case, it cannot be found that the BOP abused its discretion in arriving at a CCC placement of 45 days.  While Schellberg questions whether the BOP "actually" provided him with a good faith review, there is no indication that the BOP referred in any way to the invalid 2002 and 2005 regulations.  Further, while Schellberg argues that the BOP did not know of his employment prospect, this clearly was not adverse to him in that the BOP noted his stable history of employment despite no employment prospects.

The BOP later reduced the CCC placement to the final 30 days of Petitioner's sentence based upon his violation of institution rules.  Respondents notified the Court of this development on March 17, 2006, explaining that Schellberg had received an incident report on February 19, 2006, charging him with four violations of the disciplinary code.  (Dkt. Entry 9.)  Specifically, Schellberg was charged with the following conduct: Code 297 (Abuse of the

Telephone for Abuses Other than Criminal); Code 305 (Possession of Anything Not Authorized); Code 328 (Giving/Receiving Money or Anything of Value to/from another Inmate); and Code 331 (Introduction of a Non-Hazardous Tool, or other Non-Hazardous Contraband). These charges resulted from an investigation revealing that Schellberg called a friend on January 26, 2006, and requested that she "drop off" numerous items for him at a "drop site." These were items not available at the prison and considered to be contraband. Schellberg admitted that his friend previously had dropped off items for him.[3] (Id., Nicklin Decl. at ¶¶ 2-5.)

Schellberg appeared before the DHO on February 28, 2006, and admitted to having items dropped off and then giving them to other inmates. He was found to have committed the prohibited acts and sanctioned to 26 days loss of Good Conduct Time, 15 days of disciplinary segregation, 2 suspended sentences of disciplinary segregation, and the loss of privileges for six (6) months. (Id., ¶¶ 7-8.)

Based on the loss of Good Conduct Time, Schellberg's projected release date was changed from August 16, 2006, to September 7, 2006. On March 3, 2006, Schellberg's Unit Team met with him to review the recommendation for CCC placement, again assessed his

---

[3] FPC-Canaan is an institution which, by its open campus type design, cannot prevent contact by inmates with individuals outside of the institution.

needs, including his assertion that he has employment upon release, and recommended a thirty (30) day CCC placement based upon the change in circumstances. (Id., ¶ 10.) The Community Corrections Manager thereafter approved a 30 day CCC placement, with Schellberg now scheduled to be released to a CCC on or about August 7, 2006. It is further noted by Respondents that any further changes in the projected release date may adversely affect Schellberg's CCC placement date.[4]

      Based on the foregoing, the Court is confident that Schellberg has received the individualized determination pursuant to the required factors enumerated in § 3621(b), and there exists no basis for concluding that the BOP abused its discretion under the circumstances of this case. Contrary to Petitioner's assertion, it was plainly appropriate for the BOP to consider this serious violation of institution rules in determining the period of CCC placement. Accordingly, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

---

[4] Respondents further note that since Schellberg's misconduct involved contact with individuals outside of the institution, and FPC-Canaan cannot prevent such contact due to its design, Schellberg is currently pending transfer to an institution which can better address his security needs. On March 23, 2006, Schellberg submitted a reply to Respondent's "Notice of Subsequent Action" wherein he admits that he was found to be in violation of BOP code. (Dkt. Entry 10.) While Schellberg attempts to argue the underlying merits of this finding of guilt, this issue is not properly before the Court in the instant habeas action.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MICHAEL R. SCHELLBERG,** :
:
    **Petitioner,** : **CIVIL NO. 3:CV-05-2091**
:
  **vs.** : **(CHIEF JUDGE VANASKIE)**
:
**CAMERON LINDSAY,** :
:
    **Respondent.** :

## O R D E R

**NOW, THIS 28th DAY OF APRIL, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    The petition for writ of habeas corpus is **DENIED**.

    2.    The Clerk of Court shall mark this matter **CLOSED**.

                                  **s/ Thomas I. Vanaskie**
                                  Thomas I. Vanaskie, Chief Judge
                                  Middle District of Pennsylvania